UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gary Roslyn,                                                                Civil No. 05-0441 (PAM/RLE)

                      Plaintiff,

v.                                                                **MEMORANDUM AND ORDER**

Northwest Airlines, Inc.,

                      Defendant.

This matter is before the Court on Defendant's Motion to Dismiss the Complaint. For the reasons that follow, the Motion is denied.

**BACKGROUND**

Plaintiff Gary Roslyn was hired in November 1999 as a flight attendant for Defendant Northwest Airlines ("NWA"). As a flight attendant, Roslyn is a member of the Professional Flight Attendants Association ("PFAA") and his employment is governed by the collective bargaining agreement ("CBA") between Northwest and PFAA, dated June 1, 2000.

**A.  Bidding Process**

Roslyn is a "Reserve Status" employee. Reserve Status flight attendants, including Roslyn, must bid each month for paid leave days. Depending on seniority, these bids for paid leave days are honored. Following the bidding process, a work schedule is issued. As a Reserve Status employee, Roslyn is guaranteed pay for 75 hours per month so long as he is able to fly on the dates that he is scheduled to fly. (Compl. ¶ 10.) If a Reserve Status employee cannot fly on the Reserve Day date that he or she is scheduled to fly, then the 75 hours of paid flight time is reduced by four hours and fifteen minutes.

### B.   Army Reservist

Following the terrorist attacks on September 11, Roslyn enlisted in the Army National Guard. As a reservist, Roslyn typically reported for military training one weekend per month, plus one or two extended leaves per year. (Compl. ¶ 7.) Roslyn informed NWA management of his military training and drill schedule. Roslyn claims that he requested that NWA management help him to ensure that he be granted leave for his military duty without suffering any adverse consequences. (Id. ¶ 12.) Management told him to bid for time off using the computerized bidding system. (Id.)

Roslyn, a relatively junior flight attendant, bid for paid leave days for the days that he had scheduled military training. However, his bids for paid leave days were unsuccessful. As a result, Roslyn has been unable to work as scheduled and thus subjected to a four hour and fifteen minute deduction from his 75-hour monthly guarantee for each day that he is unable to work. Roslyn claims that NWA refuses to acknowledge and honor his military status which has caused him to lose thousands of dollars in income. He claims that these employment practices violate the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

## DISCUSSION

### A.   Standard of Review

For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the

Complaint favorably to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.    Preclusion**

Roslyn alleges that NWA utilizes employment practices that violate the USERRA. (Compl. ¶ 24.)  He claims that these employment practices denied him "benefits and full compensation for his employment." (Id.)  In this case, the CBA establishes an employee's substantive rights, including scheduling procedures, pay rates, and grievance and arbitration procedures.  NWA claims that Roslyn's claim is "inextricably intertwined" with the interpretation of the CBA and therefore his claim is precluded by the Railway Labor Act, 45 U.S.C. § 151 et seq. ("RLA"). See Gore v. Trans World Airlines, Inc., 210 F.3d 944, 949 (8th Cir. 2000).  Roslyn contends that his claim arises out of a federal statutory right to not be subject to discrimination because of his military status, which is separate and apart from the CBA and therefore not precluded by the RLA.

"Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994).  The majority of cases addressing RLA preemption involve underlying state law claims.[1]  See id.  However, the instant case involves

---

[1] Courts addressing the issue of whether the RLA preempts underlying state law claims have divided claims into two categories.  "Major" disputes involve the formation of collective

3

two federal laws, the RLA and the USERRA. Thus, the issue is not necessarily one of per se preemption, but rather whether the RLA precludes a claim brought under the USERRA. Nevertheless, the preclusion inquiry, like the preemption inquiry, focuses on congressional intent and whether the two federal statutes are compatible. See Schlitz v. Burlington N. R.R., 115 F.3d 1407, 1415 (8th Cir. 1997) (relying on preemption standards to determine that the RLA precluded claim under Age Discrimination in Employment Act ("ADEA")). Although the Court is not cognizant of any other court that has addressed the intersection of the RLA and the USERRA, the Eighth Circuit has noted that the jurisdictional inquiry of the RLA depends on whether the plaintiff's claim is "inextricably intertwined" with the language of the CBA. See Gore, 210 F.3d at 949; see also Schlitz, 115 F.3d at 1415 (discussing the intersection of the RLA and ADEA). However, this term has neither been expressly defined nor consistently applied. See Carpenter v. Northwest Airlines, Inc., File No. 00-2490, 2001 WL 1631445, at *2 (D. Minn. June 7, 2001) (Montgomery, J.) ("RLA preemption/preclusion is a complicated issue marked by somewhat imprecise and often conflicting language" (quotations omitted)).

Some courts have determined that the RLA precludes federal claims if resolution of the federal claim depends on an interpretation of the CBA. See e.g., Brown v. Ill. Cent. R.R. Co.,

---

bargaining agreements. See Hawaiian Airlines, Inc., 512 U.S. at 252. "Minor" disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." See id. (quoting Bhd. of R.R. Trainmen v. Chicago River & Ind. R.R. Co., 353 U.S. 30, 33 (1957)). Generally, "minor" disputes are preempted by the RLA. See Hawaiian Airlines, Inc., 512 U.S. at 252-53. However, "where there is a statutory basis for the claim, the 'major/minor dispute' analysis becomes irrelevant." Carpenter v. Northwest Airlines, Inc., File No. 00-2490, 2001 WL 1631445, at *3 (D. Minn. June 7, 2001) (Montgomery, J.) (quotations omitted), aff'd 47 Fed. Appx. 424, 2002 WL 31102569 (8th Cir. Sept. 23, 2002).

254 F.3d 654, 664-66 (7th Cir. 2001) (ADA claim could be dispositively resolved by interpretation of CBA). Indeed, the Supreme Court has held that the RLA does not automatically preclude all claims brought under independent federal statutes. See Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 563-64 n. 10 (1987) (plaintiff's Federal Employment Labor Act ("FELA") claim did not require interpretation of CBA, and although claim could have been grieved through RLA procedures it was not required and therefore not precluded); see also Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 439 (8th Cir. 1998) (Title VII claim not precluded by RLA); Benson v. Northwest Airlines, Inc., 62 F.3d 1008, 1115 (8th Cir. 1995) (ADA not precluded by RLA). Thus, the Court is persuaded that under these cases and the principles outlined in Hawaiian Airlines, Inc., a federal claim is precluded by the RLA only if the claim depends on the interpretation of the CBA for its resolution. See Brown, 254 F.3d at 668. That is, "when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement," then a claim brought under an independent federal statute is precluded by the RLA. Id. Therefore, so long as the parties do not dispute the interpretation of the CBA, or so long as the disputed provisions of the CBA are relevant but not dispositive, then the underlying federal claim is not precluded by the RLA. See id.; see also Hawaiian Airlines, Inc., 512 U.S. at 256-66; Consol. Rail v. Ry. Labor Executives Ass'n, 491 U.S. 299, 305 (1989) (minor disputes "may be conclusively resolved by interpreting existing agreement"); Deneen, 132 F.3d at 439 (federal discrimination claims that arise independent of collective bargaining agreement not precluded by RLA).

5

Roslyn seemingly does not dispute the interpretation of the CBA. Instead, he alleges that the scheduling procedures set forth in the CBA discriminate against him because of his military status. As a result, Roslyn claims that he suffers decreased pay. NWA claims that because the source of Roslyn's right to pay is in the CBA, his claim is precluded by the RLA. Although Roslyn claims that the alleged discrimination deprives him of a benefit related to his pay, this denial does not compel RLA preclusion. See Carpenter, 2001 WL 1631445, at *2; see also Stokes v. Norfolk S. Ry. Co., 99 F. Supp. 2d 966, 971-72 (N.D. Ind. 2000) (no RLA preclusion where the alleged discrimination was denial of rights provided in CBA); Blakely v. USAirways, Inc., 23 F. Supp. 2d 560, 564-66 (W.D. Pa. 1998) (no RLA preclusion of ADA claim even though the plaintiff would have to prove prima facie case under ADA, which required the plaintiff to prove that she is eligible and qualified under the CBA); Kidder v. E. Air Lines, Inc., 469 F. Supp. 1060, 1063 (S.D. Fla. 1978) (under preceding USERRA legislation, no RLA preclusion where alleged discrimination was denial of paid holiday as provided in the CBA).[2] Moreover, NWA fails to acknowledge that the right that Roslyn asserts is not one for

---

[2] Furthermore, the Court is persuaded by legislative history and the underlying purpose of USERRA.

> [USERRA] reaffirm[s] a general preemption as to State and local laws and ordinances, as well as employer practices and agreements . . . Moreover, this [] would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law.

H.R. Rep. No. 103-65(I), at 20 (1993) (internal citations omitted). Additionally, commenting on the preceding USERRA legislation, the Supreme Court noted:

pay, but rather the federal statutory right to not be discriminated against based on military reserve status. Indeed, the right not to be discriminated against based on military reserve status is established not by a CBA subject to the RLA, but rather by an independent source of federal law, USERRA.

Taking the allegations as true, which the Court must do, and without any development of the factual record, the Court finds that it cannot conclusively determine whether or not Roslyn's claims are dependent on an interpretation of the CBA. Accordingly, the Court defers ruling on this preclusion issue until after the record is more developed. NWA's Motion on this point is denied.

## C.     Failure to State a Claim

NWA alternatively argues that even if Roslyn's claims are not precluded by the RLA, Roslyn's claims fail for failure to state a claim. NWA contends that Roslyn seeks preferential treatment from NWA because of his military status. Indeed, USERRA does not require

---

> The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement. Although the statute does not itself create a seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits, in terms of restoration to position and advancement in status, for which Congress has provided. Petitioner sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces.

McKinney v. Missouri-Kansas-Texas R. Co., 357 U.S. 265, 268-69 (1958).

employers to provide more favorable treatment to military reservists. See Monroe v. Standard Oil Co., 452 U.S. 549 (1981). Roslyn claims that NWA's employment practices denied him a benefit of employment because of his military reserve status.

USERRA states that a "person who is a member of . . . a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). It further provides that a reservist who takes leave is "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status and pay." 38 U.S.C. § 4316(b)(1). That is, "to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." H.R. Rep. No. 103-65(I) at 33-34 (1993).

Although NWA frames the Complaint as one for "relief from the consequences of [Roslyn's] relatively junior status as a flight attendant," the Court finds that the allegations sufficiently claim that NWA's employment practices discriminate against Roslyn in violation of USERRA. The Complaint alleges that Roslyn was denied benefits because of his military reserve status. As a Reserve flight attendant, Roslyn is entitled to 75-hours a month in guaranteed pay. He alleges that his status as a military reservist prevents him from realizing this benefit. Although Roslyn bears the burden to ultimately demonstrate that the denial of this benefit was improperly motivated by his military status, that issue is not before the Court. Rather, taking the allegations of the Complaint as true, the Court cannot say that "it appears

8

beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief."[3] Morton, 793 F.2d at 187.  Accordingly, NWA's Motion on this point is denied.

**CONCLUSION**

Roslyn has satisfied the minimal requirements of Federal Rule of Civil Procedure 12(b)(6).  The Court notes that Roslyn bears the ultimate burden to prove that NWA discriminated against him because of his military status.  Accordingly, based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Clerk Doc. No. 6) is **DENIED**.

Dated: June 29, 2005

                                              s/ Paul A. Magnuson
                                              Paul A. Magnuson
                                              United States District Court Judge

---

[3] The Court also notes the uncertainty of whether USERRA provides a cause of action based on disparate impact. See Miller v. City of Indianapolis, 281 F.3d 648, 651-52 (7th Cir. 2002) (discussing disparate impact but declining to conclusively determine whether a disparate impact claim can be prosecuted under USERRA).  However, broadly construing the Complaint, the Court finds that Roslyn's allegations may state a claim for disparate impact.  Roslyn does allege that he, as a military reserve employee, was disparately affected by NWA's scheduling procedures because of his military status.  The ultimate issue for Roslyn to prove is that the disparity of which he claims arises out of military service – not from some other source.